**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JANE HELLER, and** | § | |
| **KRISTI VONDEYLEN** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **EP-22-CV-00398-FM-MAT** |
| | § | |
| | § | |
| **MARRIOTT VACATIONS** | § | |
| **WORLDWIDE CORP,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**</u>

Before the Court is Defendant Marriott Vacations Worldwide Corporation's ("Defendant") "Renewed Motion to Dismiss Plaintiffs' First Amended Class Action Complaint for Lack of Personal Jurisdiction" ("Renewed Motion to Dismiss"), filed on August 11, 2023. (ECF No. 26).[1]   The motion has since been fully briefed.  (ECF Nos. 28 & 31).   Therefore, Plaintiffs Jane Heller and Kristi VonDeylen's ("Plaintiffs") request alternatively a "Motion for Leave to Amend" (ECF No. 28), filed August 25, 2023.  For the following reasons, the Court **RECOMMENDS** that Defendant's Renewed Motion to Dismiss be **GRANTED** and Plaintiffs' Motion for Leave to Amend be **GRANTED**.

## I.        FACTUAL & PROCEDURAL BACKGROUND

This action arises out of an alleged violation of the Telephone Consumer Protection Act ("TCPA").  The TCPA regulates telephone solicitations and the use of automated telephone

---

[1] On September 14, 2023, Senior United States District Judge Frank Montalvo referred these motions to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C to the Local Rules.  (ECF No. 32).

1

equipment.  47 U.S.C. § 227(b).  It prohibits, among other things, any call made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone "within any 12-month period by or on behalf of the same entity in violation of the regulation." 47 U.S.C. § 227(c)(5).  Further, the TCPA also delegates regulatory authority to the Federal Communications Commission ("FCC").  One regulation promulgated by the commission provides that no person shall initiate any telephone solicitation to "an owner of a residential or wireless telephone subscriber who has registered his or her telephone number on the National Do-Not-Call registry…." 47 C.F.R. § 64.1200(e).

Plaintiffs are two Texas residents who allege receiving promotional calls from Defendant while being registered with the National Do Not Call List ("DNC List").[2]  Defendant is a Delaware holding company doing business in Florida.  "Declaration of Patricia M. DePalma" ("DePalma Decl.") ¶ 5, ECF No. 13-1.  Central to the issues raised by both parties is the relationship between the Defendant entity and two non-defendant companies: Marriott Ownership Resorts, Inc. ("MORI") and Marriott International, Inc. ("MII").  MORI is Defendant's wholly owned subsidiary.[3] Moreover, MORI is the "only entity that makes promotional or marketing campaigns to consumers in the United States on behalf of the various subsidiaries of Defendant in relation to any vacation ownership product marketed under the licensed brand names with the names 'Marriott,' 'Sheraton,' or 'Westin' in them."  (ROG Response No. 1.)  MII is "an unrelated, separate company from Defendant." (ECF No. 26, at 2 n.2).

---

[2] "Plaintiffs' First Amended Class Action Complaint" ("FAC") ¶¶ 30-38, ECF No. 5, filed Nov. 7, 2022.

[3] "Defendant's Amended Response to Interrogatory" ("ROG Response") No. 1, ECF No. 26-3, filed Aug. 11, 2023.

Plaintiffs allege that Defendant or its agents made several telemarketing calls to Plaintiffs between 2021 and 2022, offering rental services or timeshares, in violation of the TCPA and related regulations by making unsolicited telephone calls using artificial or prerecorded voices. FAC ¶¶ 30-38; *see* 47 U.S.C. § 227. Each call was allegedly made by initiating telephone solicitations to their wireless telephone numbers which they claim to be registered on the DNC List. *Id.*

Defendant's instant motion is Defendant's second motion to dismiss. On January 6, 2023, Defendant filed its original "Motion to Dismiss Plaintiffs' First Amended Class Action Complaint for Lack of Personal Jurisdiction." (ECF. No 13). In support of its motion, Defendant filed an affidavit by Patricia M. DePalma, a senior paralegal for MORI. *Id.*; DePalma Decl. ¶¶ 1-2. On April 26, 2023, the Court entered "Order Denying Motion to Dismiss and Authorizing Jurisdictional Discovery" (ECF No. 16), after the Court found its jurisdiction over Defendant unclear. Plaintiffs conducted limited jurisdictional discovery through written interrogatories and took the deposition of Defendant's Federal Rule of Civil Procedure 30(b)(6) witness, Nur Rosa. (ECF No. 26, at 2). Nur Rosa is the Vice President of Call Center and Marketing Operations for MORI. (ECF No. 27, at 1). Subsequently, Defendant filed their renewed motion to dismiss.

Plaintiffs assert the court has jurisdiction over their claims because Defendant's alleged agents, including MORI, "make telemarketing calls on its behalf and MORI made telemarketing calls on behalf of Defendant and MII."[4] However, Defendant contends Plaintiffs' claims must be dismissed because Defendant is a "holding company which does not conduct any outbound call campaigns," and "no agents, contractors or other entities make telemarking calls on behalf of

---

[4] "Plaintiffs' Response to Defendant's Renewed Motion to Dismiss Plaintiffs' First Amended Class Action Complaint for Lack of Personal Jurisdiction, and Alternative Motion for Leave to Amend" ("Response") 1-2, (ECF No. 28), filed Aug. 25, 2023.

Defendant." (ECF No. 26, at 2).   More specifically, Defendant states that MORI "is the only entity that makes promotional or marketing campaign calls to consumers in the United States on behalf of the various subsidiaries of Defendant in relation to any vacation ownership product" and moreover, that MORI did not make the calls at issue or "any pre-recorded telemarketing calls." (ECF No. 26, at 4-5).   In response, Plaintiffs insist that Defendant's agent, MORI, makes telemarketing calls on Defendant's behalf and on behalf of MII.  (ECF No. 28, at 1-2).  Plaintiffs also allude to a telemarketing agreement allegedly entered into by Defendant and MII. *Id.* Plaintiffs contend that pursuant to this Telemarketing Service Agreement ("TSA") between Defendant and MII, MII dictates which contact information in its databases Defendant is allowed to call, "which is then handled by MORI, making Defendant an agent of MII, and MORI an agent of Defendant and MII."  (ECF No. 28, at 2).  Lastly, Plaintiffs assert that under an agency and vicarious liability theory, Plaintiffs can establish specific jurisdiction.  In the alternative they ask to amend the complaint to add MORI and MII as defendants.

In its Reply, Defendant emphasized that MORI did not make outbound telemarketing calls on behalf of Defendant and has "never made, outbound prerecorded telephone calls." [5] Moreover, Defendant asserts that "even if the conduct of Defendant's subsidiaries could be imputed to Defendant for jurisdictional purposes," the evidence demonstrates no record exists of the alleged phone calls to Plaintiffs.  *Id.*  Therefore, Defendant argues that this court lacks personal jurisdiction over Defendant.

---

[5] "Defendant's Reply Brief In Support of Its Renewed Motion to Dismiss Plaintiffs' First Amended Class Action Complaint For Lack of Personal Jurisdiction And Opposition to Plaintiffs' Motion For Leave To Amend" ("Reply") 5-7, (ECF No. 31), filed Sep. 8, 2023.

## II.     LAW & ANALYSIS

### A.  Personal Jurisdiction

A defendant's contacts with a foreign state are analyzed under one of two theories: specific jurisdiction or general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists when a defendant's contacts with the forum state are so continuous and systematic as to render the defendant "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014). General jurisdiction for a corporation is proper within a state "in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

For specific jurisdiction to exist, "the suit must 'arise out of or relat[e] to the defendant's contacts with the forum.'" *Id*. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* "The burden of establishing personal jurisdiction over a non-resident defendant lies with the plaintiff." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).

A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted by a state court under applicable state law. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (citations omitted). The reach of this jurisdiction is limited by: (1) the state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the federal Constitution. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990). Texas's long-arm statute specifically provides for personal jurisdiction over nonresidents who "do[ ] business" in Texas or "commit[ ] a tort" in Texas. TEX. CIV. PRAC. & REM. CODE § 17.042. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the

federal due process analysis." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019). Plaintiff must show that Defendants had "minimum contacts with Texas—meaning that [they] 'purposely availed [themselves] of [Texas's] benefits and protections'—and that exercising jurisdiction will not 'offend traditional notions of fair play and substantial justice." *Id.* To evaluate if minimum contacts exist with the forum, courts look at:

> (1) if the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there
>
> (2) ask if the case arises out of or results from the defendant's forum-related contacts
>
> (3) ask if the exercise of personal jurisdiction is fair and reasonable.

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021).

### 1. *Burden of Proof*

Parties "seeking to invoke the power of the court bea[r] the burden of proving that jurisdiction [over the moving defendant] exists." *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994). But plaintiffs are not required to "establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices." *Id.* at 469. To resolve a personal jurisdiction dispute, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). In deciding whether a plaintiff meets their burden, "we take as true the nonconclusory, 'uncontroverted allegations in the plaintiff's complaint' and we resolve 'conflicts between the facts contained in the parties'

affidavits. . . in the plaintiff's favor." *Bulkley & Assocs., L.L.C.*, 1 F.4th at 350. "If a plaintiff establishes minimum contacts, the burden then shifts to the defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

2. *Minimum Contacts*

As a preliminary matter, Plaintiffs concede that the state of Texas does not have general jurisdiction over Defendant. (ECF No. 28, at 2). Defendant is incorporated under the laws of the State of Delaware and has its principal place of business in the State of Florida. (ECF No. 26, at 3). Therefore, Texas does not have general jurisdiction over Defendant.

Regarding specific jurisdiction, Plaintiffs assert Defendant's contacts in Texas are the telemarketing calls MORI allegedly made on Defendant's behalf to Plaintiffs without confirming that Plaintiffs are on the National DNC List. Plaintiffs allege that these phone calls establish personal jurisdiction for their TCPA claim.

To determine minimum contacts, the question in the instant case is whether the phone calls the Plaintiffs received sufficiently establish forum-related contacts. The cause of action is a TCPA claim where it is unlawful "to make any call using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service." 47 U.S.C § 227(b)(1). Plaintiffs themselves assert in their Response that the calls were not made directly by Defendant Marriott Vacations Worldwide Corporation, but by MORI, a non-party. (ECF No. 28, at 1-2). Thus, the phone calls are not contacts made by the only Defendant in the lawsuit. However, Plaintiffs rely on vicarious liability and argue that MORI is an agent of Defendant and made the calls on their behalf. (ECF No. 28, at 1-2). Thus, determining minimum

contacts requires scrutiny of whether MORI is an agent of Defendant, and whether their contacts

with the Plaintiffs can be imputed onto the Defendant for the establishment of personal jurisdiction.

> 3.  *Is there an agency relationship between the Defendant and the subsidiaries*
>     *making the calls?*

"Agency relationships, we have recognized, may be relevant to the existence of specific

jurisdiction … as such, a corporation can purposefully avail itself of a forum by directing its agents

or distributors to take action there." *Bauman*, 571 U.S. at 135.  If an agency relationship exists,

then the callers' contacts with the forum State can be attributable to the principal.  *See, e.g.*,

*Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7,

2023) ("[A] a defendant may be held vicariously liable for TCPA violations where the plaintiff

establishes an agency relationship … between the defendant and a third-party caller." (quoting

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016)));

*Bradley v. DentalPlans.com*, 617 F.Supp.3d 326, 337 (D. Md. 2022) (holding that a court may

exercise personal jurisdiction over a non-resident corporation based on the acts of its agents in the

forum state); *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861–62 (N.D. Ill. 2020)

(exercising personal jurisdiction based on an agency theory in a TCPA robocall case). This

principle aligns with the purpose of the TCPA statute because "the TCPA would no longer offer

consumers relief from intrusive robocalls if sellers could 'avoid liability by outsourcing its

telemarking activities to unsupervised third parties.'" *Id.* However, if vicarious liability or an agent

relationship cannot be established, then the offending contacts by the third party cannot support

jurisdiction.  *See Canales v. Michaux*, No. 1:18-CV-507-RP, 2019 WL 13153212, at *4 (W.D. Tex.

Dec. 9, 2019) (holding that plaintiff failed to state a prima facie case for specific jurisdiction

because plaintiff's conclusory allegations were insufficient to link defendant to the offending contacts by a third party).

### a.   Theories of Agency

The existence of an agency relationship can be shown by demonstrating (1) actual authority where the principal assigns "the agent's task and controls the means and details of the process by which the agent will accomplish that task," (2) apparent authority, which holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal or (3) ratification, where a principal may be liable if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances. *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008); *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985); Land Title Co. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756–57 (Tex. 1980).

### i.   Actual Authority

Vicarious liability under the TCPA is governed by the federal common law of agency. *Bradley*, 617 F.Supp.3d at 339 (citing *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018)). An agency relationship exists when one person or entity "manifests assent" to another person or entity "that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* The essential element of actual authority is the principal's control over the agent's actions. For TCPA cases, the relevant inquiry is "whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign." *Id.* The level of control to establish agency

"must be high and very significant." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d at 530.

A review of cases which have addressed vicarious liability and agency law within the context of TCPA litigation is instructive. In *Bradley v. DentalPlans.com*, plaintiffs brought a putative class action alleging violations of the TCPA against DentalPlans.com ("DentalPlans"), a provider of dental discount plans which engaged in telemarketing, and Cigna Insurance Company ("Cigna"). 617 F.Supp.3d at 331-32. Plaintiffs alleged Cigna and DentalPlans violated the TCPA by conducting repeated "robocalls" offering dental plans even after plaintiffs asked DentalPlans to stop the calls. *Id.* Subsequently, Cigna moved to dismiss for lack of personal jurisdiction. *Id.* at 331. Evidence showed DentalPlans was an agent of Cigna. The court noted Cigna had the right to provide interim instructions to the telemarketer in the form of a script modification, and Cigna in fact provided a script for DentalPlans to use. Cigna had the authority to terminate the relationship unilaterally, but DentalPlans did not. Additionally, Cigna allowed DentalPlans to market its dental discount plan only if they provided Cigna with detailed information about its marketing strategies. Lastly, DentalPlans needed Cigna's prior written approval to market Cigna's products, and Cigna had the ability to direct or immediately suspend any third party from marketing, advertising, or promoting the discount plan. *Id.* at 341. The *Bradley* court was persuaded by all of these circumstances that Cigna exercised a high level of control over how DentalPlans.com marketed its services. It therefore held that it had personal jurisdiction over Cigna because DentalPlans was an agent of Cigna. *Id.* at 343

In *Krakauer v. Dish Network, L.L.C.*, 925 F 3d 643, 663 (4th Cir. 2019), the court found an agency relationship between Dish Network and a third-party entity, SSN. SSN was contracted by Dish Network to place telemarketing sales calls to its customers for Dish TV services. *Id.* at 645.

In affirming the jury's finding that SSN reached out to customers in violation of the TCPA, the Fourth Circuit determined that an agency relationship existed because Dish had broad authority over SSN's business. *Id.* at 660-61. In support of this conclusion, the court noted the following: (1) Dish determined what technology and records SSN had to retain, (2) Dish's contract with SSN clearly stated it had authority over SSN regarding TCPA compliance, and (3) SSN used Dish's logo in carrying out its operation. *Id.* at 660. Further, Dish was aware of SSN's legal violations but took no meaningful action to ensure compliance. *Id.*

In contrast, in *Callier v. SunPath Ltd.*, No. IP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020), the court held that plaintiff had "not made out a prima facie case that an agency relationship exist[ed]" between defendants and an unidentified third-party telemarketer. The plaintiff alleged receiving a series of phone calls with prerecorded messages selling automotive products and services of two defendants, SunPath Ltd., and Northcoast Warranty Services. *Id.* at 1. However, the calls connected plaintiff to telemarketers that "did not identify themselves or the company for which they worked." *Id.* The court noted that affidavits provided by defendants laid out that neither defendant entity maintained control or oversight over the third-party marketing firms that made the calls. *Id.* Nor did either defendant entity select who the third-party marketing firms marketed to, or the manner in which those marketing firms conducted their operations. *Id.* Significantly, the court noted Plaintiff offered no affidavit or support contradicting Defendant's affidavits. *Id.* Therefore, because plaintiff only made conclusory assertions that defendants were vicariously liable for the telemarketing calls without stating the nature of the relationship the defendants had with the unidentified telemarketing firm, the court stated it could not "reasonably infer an agency relationship ...." *Id.*

In the instant motion, Defendant argues that even if the Court considers the conduct of Defendant's subsidiaries, Plaintiffs have not adequately alleged its subsidiaries were acting as Defendant's agents and therefore the subsidiaries' contacts cannot be imputed to Defendant to satisfy the jurisdictional requirement.  (ECF No. 26, at 9-10).  Specifically, Defendant argues it is not vicariously liable for its subsidiaries' actions.  It argues Plaintiff has not adequately alleged Defendant's subsidiary, MORI, has actual or apparent authority to act on Defendant's behalf when it conducts promotional or marketing campaign calls to consumers, nor that Defendant ratifies MORI's actions.  *Id.*

Defendant provides the Declaration by MORI's senior paralegal, Patricia M. DePalma, responses to written discovery, and deposition testimony of Defendant's corporate representative and MORI's vice president of Call Center and Marketing Operations, Nur Rosa, in support of its assertion that MORI conducts marketing campaign calls on behalf of various subsidiaries of Defendant, but not on behalf of Defendant itself.  (ECF No. 26, at 10); *see* ROG Response No. 1; *see also* DePalma Decl. ¶¶ 5-6.  By contrast, Plaintiffs allege Defendant and MII were parties to the Telemarketing Service Agreement and argue that through the agreement, Defendant directed the telemarketing activities of MORI.  (ECF No. 28, at 2).  Additionally, Plaintiffs argue that Defendant's "board and CEO direct the overall activities of MORI, Defendant's headquarters is on the same corporate campus as MORI, and MORI handles a substantial part of Defendant's operations."  *Id.* at 3.

In reply, Defendant denies Plaintiffs' allegations that MORI "handles a substantial part of Defendant's operations, particularly telephone call operations," and emphasizes that Rosa's deposition testimony provided that "MORI's operations are not on behalf of a holding company… [they are] on behalf of MORI."  (ECF No. 31, at 5).  Importantly, Defendant clarifies in its reply

that the "TSA was actually executed by MII and MORI in 2011 and remains in force." (ECF No. 31, at 9).  To that end, Defendants provide a redacted portion of the TSA specifically identifying the parties to the agreement.  (ECF No. 31-2, Exhibit A, 5-6).

Neither party provides the Court with a full copy of the TSA.  However, Rosa's deposition testimony states that Defendant does not exercise control over the means and methods by which MORI carries out its duties under the contract.  (ECF No. 27) (Exhibit 1, "Rosa Dep.") 8: 1-11. She testified Defendant has no control over MORI's promotional calls to consumers, how MORI obtains leads, or what MORI says during the calls.  (Rosa Dep 8:1-11, 17:6-18:15.)  Unlike the defendants in *Bradley* and *Krakauer*, Defendant could not unilaterally terminate the contract because it was not a party to the contract.  Rosa's deposition testimony asserts Defendant did not specify how MORI would market its services or that MORI must use a script created by Defendant for their marketing campaigns.   While Rosa confirmed in her deposition testimony that Defendant's board and CEO provide overall strategic direction and objectives for MORI, she also testified that as MORI's vice president of Call Center and Marketing Operations, she creates the programs to meet the objectives as the vice president of the call center and marketing operations. Rosa's deposition testimony establishes that Defendant does not exercise a *high* or *significant* level of control over MORI.

In sum, Defendant has asserted that it did not control the manner and means of MORI's telemarketing campaigns and Plaintiff did not offer affidavits or support contradicting Defendant's affidavits.  Therefore, it is clear to the Court that MORI is not an agent of Defendant under an actual authority theory of agency.

ii.  Apparent Authority

Under an apparent authority form of agency, an agent has apparent authority to bind a principal if a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. *Bradley*, 617 F.Supp.3d at 326. "Apparent authority… can exist where 'the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 237 (4th Cir. 2019); *see also* RESTATEMENT (THIRD) OF AGENCY § 2.03, cmt. c (AM. L. INST. 2006) (listing multiple circumstances that do not require a principal's direct communication with a third party to manifest apparent authority). Thus, apparent authority must be traceable to the conduct of the principal—in this case to Defendant's conduct. *See Callier*, 2020 WL 10285659, at * 3.

Rosa's deposition testimony on behalf of Defendant asserts that Defendant did not hold out MORI as possessing authority to make calls on its behalf. (Rosa Dep 5:12-6:7.) Instead, Defendant states through Rosa's deposition testimony that MORI conducts direct marketing programs and does *not* handle any part of Defendant's operations. (Rosa Dep 22:8-23:4, 56:21-57:4); DePalma Decl. ¶¶ 5,6. Plaintiffs have not pleaded facts establishing Defendant acted to create the appearance of an agency relationship. Given these facts, Plaintiffs also cannot establish MORI acted with apparent authority.

### iii.   Ratification

The final agency theory available to Plaintiff is ratification. Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (AM. L. INST. 2006). A party "may ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." *Id.* A purported principal, however, 'is not bound by ratification made without

14

knowledge of material facts involved in the original at when the [party] was unaware of such lack of knowledge. *Id.* at § 4.06. Therefore, for Defendant to be held vicariously liable under an agency theory of ratification, it must have been aware of any unlawful calls made by MORI and did not object or repudiate any benefits to it.

In *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 831 (N.D. Ill. 2016), the court held defendant liable for violations of the TCPA under ratification theory, because it knowingly accepted the benefits that flowed from the telemarketing campaign in the form of increased business. Plaintiffs in *Aranda* alleged defendants, Caribbean Cruise Line, Inc. ("CCL") and Berkley Group Inc., ratified calls made by a third-party non-profit organization, ESG, when plaintiff consumers opted to learn more about a prize contest for a cruise and were transferred to a representative from CCL. *Id.* at 820. Participants who opted to partake in a cruise were then offered an upgrade if they took a timeshare tour at a Berkley facility. *Id.* The court noted there was evidence that defendants were aware of the call campaign, and that it violated the TCPA, but thought that it could increase business. *Id.* at 833. Additionally, the court noted that defendants did not identify any evidence that it took any steps to ensure that it would no longer receive leads generated through the unlawful calls. *Id.* The *Aranda* court was persuaded that defendants knew ESG was placing the unlawful calls and ratified their actions through acceptance of the referrals.

Conversely, in *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 581 (S.D. Ohio 2016), an alleged principal was held not liable under a ratification theory. HomeAdvisor contracted with a company, One Planet, to send HomeAdvisor leads for customers. *Id.* One Planet in turn hired another company, Lead House LLC ("Lead House") to generate those leads. Lead House made phone calls that violated the TCPA. *Id.* The plaintiff argued HomeAdvisor was vicariously liable because HomeAdvisor received the benefit of the Lead House's calls and knew about these calls.

15

*Id.* at 585.  The evidence showed, through HomeAdvisor's declaration, that the company neither knew nor should have known that the Lead House was violating the TCPA.  *Id.* at 585–86. HomeAdvisor was not aware One Planet, the original company it contracted with to generate customer leads, contracted with a third company to generate those leads.  Moreover, HomeAdvisor did not know of the TCPA violations of this third company until the complaint was filed.  *Id.* at 586.  The only red flag that HomeAdvisor should have known about the TCPA violations is that the plaintiff had previously sued for calls made by third parties on behalf of Home Advisor. However, the court was not satisfied HomeAdvisor knew of the violating calls plaintiff received to prove ratification by HomeAdvisor for purposes of agency analysis.  *Id.* at 588.

In the instant case, the Defendant attests it did not know of any calls made by MORI in violation of the TCPA.  Unlike *Johansen*, here Defendant has not alluded to receiving any complaints about MORI making calls in violation of the TCPA prior to Plaintiff's complaint alleging wrongdoing by the Defendant.  Defendant has also asserted through discovery responses that telemarketing campaign calls related to the type of calls received by Plaintiffs are solely performed by its subsidiary MORI, while consistently denying making any calls in violation of the TCPA.  Plaintiffs have also not put forth any evidence suggesting Defendant received notice of phone calls which violated the TCPA.  As with the defendant in *Johansen* where call leads were generated by a third party and not the principal, Defendant's corporate representative also testified MORI markets through lead-generation activity gathered by paid social media efforts where customers give consent to call.  (Rosa Dep. 13:24-14:10.)  Ultimately, MORI is not an agent of Defendant under a ratification theory because there is no evidence of Defendant's affirmance of a TCPA prohibited act by MORI.  Lastly, there is no evidence that Defendant received a benefit.

Under any theory of agency, Plaintiffs have not shown that MORI was an agent of the Defendant.  The Defendant did not exercise a high or significant level of control over MORI's telemarketing campaigns and was therefore not an actual agent.  Nor was MORI an apparent agent based on the testimony of Nur Rosa, stating that Defendant never held out MORI as possessing authority to make calls on its behalf.  Finally, there is nothing to indicate Defendant ratified any alleged behavior violative of the TCPA or failed to repudiate a benefit.  Thus, the Court finds that MORI is not an agent of the Defendant.

4.   *Plaintiffs have not established sufficient minimum contacts exist for personal jurisdiction.*

Even if the Court were to attribute any alleged contact with the Plaintiffs to the Defendant entity, the Plaintiffs have failed to establish minimum contacts for purposes of personal jurisdiction.  Although the plaintiff bears the burden of proof of establishing personal jurisdiction on a motion to dismiss, it is not necessary for the plaintiff to establish personal jurisdiction by a preponderance of the evidence, as prima facie evidence of personal jurisdiction is sufficient.  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).  In considering a motion to dismiss for lack of personal jurisdiction, a district court may consider recognized methods of discovery, including affidavits, interrogatories, or oral testimony.  *Spademan*, 772 F.2d at 1192.  The Court must accept the plaintiff's "*uncontroverted* allegations and resolve in [their] favor all conflicts between the facts contained in the parties' affidavits and other documentations."  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir.2000) (emphasis added).  Plaintiffs contend all their disputed allegations of minimum contacts must be taken to be true.  "[T]he general rule for resolving conflict [between the facts put forth by the parties] applies to affidavits and other admissible evidence, not mere allegations." *Cooper v. McDermott Int'l, Inc.*, 62 F.3d 395 (5th Cir.

1995)**;** *see also Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir.1993) (unsupported conclusory allegations are insufficient to withstand a motion to dismiss).

Plaintiffs contend that Defendant directed the telemarketing activities of MORI, who it alleges placed the calls to Plaintiffs.  Specifically, Plaintiffs allege in their complaint that they received a call from Defendant "with an artificial or prerecorded voice." FAC ¶¶ 31, 34.  Plaintiffs point to no discovery to support this statement beyond its initial assertion.  Plaintiffs' allegation that Defendant called using an artificial or prerecorded voice is disputed by Rosa's deposition testimony stating that Defendant does not conduct prerecorded voice calls.  (Rosa Dep. 47:10-2.) Plaintiffs' allegation regarding artificial or pre-recorded voices is only an assertion and is not supported by admissible evidence.  In contrast, Defendant's denial that it ever conducted prerecorded calls for marketing campaigns are properly contained in the discovery responses and deposition testimony.  (Rosa Dep. 47:10-2.) More significantly, Plaintiffs assert having received calls on their cellular phones from Defendant during 2021 and 2022.  FAC ¶¶ 31,34. However, these are conclusory allegations unsupported by any of the "recognized methods of discovery." *See Spademan*, 772 F.2d at 1192.  Additionally, even after the limited jurisdictional discovery allowed by the Court, Plaintiffs' names and numbers are not in any call databases or outreach records kept by MORI.  (ROG Response No. 5).

Specific jurisdiction cannot be established by the Plaintiff because Plaintiffs' claims do not arise out of any contact attributable to Defendant.  This is so even if it is assumed arguendo that any minimum contacts by MORI are attributable to the Defendant.  In their First Amended Complaint, Plaintiffs sue on a vicarious liability theory, contending that Defendant or "Defendant's … agents committed such act or omission and that … it was done with the full authorization, ratification or approval of Defendant …." FAC ¶ 11.  Further, Plaintiffs state that they received

calls with an artificial or prerecorded voice.  FAC ¶¶ 31,34.  Both of these assertions are conclusory and contested by admissible evidence.  The Court finds Plaintiffs have not stated a prima facie case for specific personal jurisdiction.  Accordingly, the Court recommends that this case be dismissed for lack of personal jurisdiction.

### B.  Leave to Amend

Alternatively, Plaintiffs request the Court grant leave to amend their complaint to add MORI and MII as defendants.  (ECF No. 28, at 8-9).  Federal Rule of Civil Procedure 15(a) ordinarily governs the amendment of pleadings and provides that, when the court's permission is needed, leave should be "freely given when justice so requires."  *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)).  In determining whether leave to amend should be granted, the court can consider factors such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of amendment.  *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  A court must have "substantial reason" to deny a request for leave to amend.  *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)).  Moreover, the Fifth Circuit has a "strong preference for *explicit* reasons" in denying leave to amend.  *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citing *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153–54 (5th Cir. 1981)).  To demonstrate futility, "[a]n amendment is futile if it would fail to survive a Rule 12(b)(6) motion.  *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n.*, 751 F.3d 368, 378 (5th Cir. 2014); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir.

2000) (interpreting futility to mean that the amended complaint would fail to state a claim upon which relief could be granted).

Plaintiffs move this Court to amend their complaint "in light of the new information" received during discovery and assert there has not been a repeated failure to cure deficiencies to overcome the generally permissive standard in favor of amendment. (ECF No. 28, at 9-11). In their Proposed Second Amended Complaint ("SAC"), Plaintiffs seek to add MORI and MII as defendants. Notably, Plaintiffs have also included an amended allegation regarding the manner in which Plaintiff Kristi VonDeylen received calls. Specifically, Plaintiffs now allege that Ms. VonDeylen also received a call directly dialed by Defendants. SAC ¶ 36.

Defendant limits its opposition to the Plaintiff's request for leave to amend to the argument that doing so would be futile. Moreover, Defendant argues that Plaintiffs' proposed amendments would be futile because Plaintiffs' Proposed Second Amended Complaint would be subject to dismissal for the same reasons discussed in its Renewed Motion to Dismiss. (ECF No. 31, at 12). Further, Defendant asserts that "there is no evidence that MORI ever called Plaintiffs on its own behalf … or anyone else (including MII)." *Id.* In particular, Defendant emphasizes that MORI does not use an automatic telephone dialing system or prerecorded voice to conduct campaign calls and Plaintiffs have alleged in part receiving an artificial or prerecorded voice. Indeed, the Court notes that this allegation remains the same for Plaintiff Jane Heller in the Proposed Second Amended Complaint but was amended only for Plaintiff Kristi VonDeylen to include directly dialed calls. SAC ¶¶ 33, 36.

This is Plaintiffs' second attempt to amend. It is simply not evident that the Proposed Second Amended Complaint—which includes the new phone call allegations and addition of MORI and MII—would fail to survive a 12(b)(6) motion for failure to state a claim upon which

relief could be granted.  The Court disagrees with the Defendant that allowing the amended complaint would be clearly futile.  The Court, therefore, recommends Plaintiffs' Motion for Leave to Amend be **GRANTED**.

### III.    CONCLUSION

The Court **RECOMMENDS** that Defendant's Renewed Motion to Dismiss (ECF No. 26) be **GRANTED,** and Plaintiffs' Motion for Leave to Amend (ECF No. 28) be **GRANTED**.

**SIGNED** and **ENTERED** this <u>11th</u> day of October, 2023.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**